J-S79026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSHUA MANNERS | |
| Appellant | No. 3590 EDA 2015 |

Appeal from the Judgment of Sentence August 25, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0004304-2014

BEFORE:  GANTMAN, P.J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:          **FILED DECEMBER 16, 2016**

Joshua Manners appeals from the August 25, 2015 judgment of sentence[1] imposed by the Court of Common Pleas of Chester County following Manners' convictions for driving under the influence of alcohol ("DUI"), unauthorized use of automobiles, and various summary offenses.[2] We affirm.

---

[1] In his notice of appeal, Manners purports to appeal from the order denying his post-sentence motions.  However, an "order denying post-sentence motions acts to finalize the judgment of sentence for purposes of appeal.  Thus, the appeal is taken from the judgment of sentence, not the order denying post-sentence motions." ***Commonwealth v. Chamberlain***, 658 A.2d 395, 397 (Pa.Super. 1995).

[2] Manners was convicted of one count each of DUI, 75 Pa.C.S. § 3802(a)(1), and unauthorized use of automobiles, 18 Pa.C.S. § 3928.  He was also convicted of the following summary offenses:  driving on roadways laned for traffic, 75 Pa.C.S. § 3309(1); following too closely, 75 Pa.C.S. § 3310(a); driving on divided highways, 75 Pa.C.S. § 3311(a); driving

*(Footnote Continued Next Page)*

On October 4, 2014, Manners and Eugene Goeser attended a mutual friend's wedding in Delaware. After the wedding reception, Manners obtained the keys to Goeser's vehicle from the valet at the venue without Goeser's knowledge. While driving Goeser's vehicle northbound on Route 1 in Pennsylvania, Manners lost control of the vehicle, which crossed the median and struck a southbound-traveling vehicle operated by Susan Cornett. When Pennsylvania state troopers arrived at the scene, the vehicle operated by Manners was lying on its side on the right shoulder of the southbound lane, and Cornett's vehicle was resting against the guardrail. Manners refused field sobriety tests and was arrested for DUI. The trial court further found:

> [Manners] admits he was driving Dr. Goeser's vehicle [on] the night in question . . . [but] Dr. Goeser testified that [Manners] did not have permission to drive his car that night. . . .
>
> . . . Dr. Goeser testified that the plan was for Dr. Goeser to pick [Manners] and his date up from the hotel, drive to their friend's wedding, leave the car there, take a taxi cab home, and then pick up his car the next morning. They made these plans because all parties were planning on drinking that night.

Opinion Pursuant to Pa.R.A.P. 1925, 4/29/16, at 4 ("1925(a) Op.").[3]

_____

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

vehicle at safe speed, 75 Pa.C.S. § 3361; and careless driving, 75 Pa.C.S. § 3714(a).

[3] The trial court misidentified the applicable rule as "Pa.R.C.P. 1925" rather than Pennsylvania Rule of Appellate Procedure 1925.

- 2 -

Following a two-day bench trial, the trial court convicted Manners of DUI, unauthorized use of automobiles, and related offenses. On August 25, 2015, the trial court sentenced Manners to 1 to 6 months' incarceration followed by 2 years' probation and made him work-release eligible after serving 14 days of his prison sentence. The trial court also ordered Manners to pay restitution as follows: $300.42 to Cornett; $5,000 to Blue Cross Blue Shield; $9,627 to State Farm Insurance Company; and $4,300 to Goeser.

On September 3, 2015, Manners timely filed post-sentence motions, challenging the sufficiency of the evidence to support his convictions and requesting a modification of his sentence. After an evidentiary hearing, the trial court denied the post-sentence motions on November 2, 2015. Manners timely appealed to this Court.

On appeal, Manners raises the following issues:

A. Whether the Commonwealth failed to present evidence sufficient to establish beyond a reasonable doubt that [Manners] did <u>not</u> reasonably believe that the owner of the vehicle in question would have consented to the operation of the vehicle had he known of it pursuant to 18 Pa.C.S. §3928(b).

B. When [Manners] made application for appeal bail at sentencing, was it vindictive and/or based on impermissible sentencing factors to increase the amount of jail time [Manners] would have to serve from three days to fourteen days to become work release eligible?

C. Did the trial court rely on impermissible sentencing factors or considerations

i) when it informed [Manners] it was bad timing [for him] because of an unrelated homicide;

> ii) when the court commented how its college students were embarrassed of [Manners] and thought he testified poorly.

> D. Whether the trial court's restitution order was illegal in that it was:

>> i) speculative and unsupported by the record as to the $4300 ordered to Eugene Goeser; and

>> ii) unsupported by the record and violated [Manners'] due process rights as to the $4500 to Blue Cross/Blue Shield.

Manners' Br. at 3-4.

Manner first argues that the evidence was insufficient to support his conviction for unauthorized use of automobiles because the evidence established that Manners reasonably believed that Goeser would have consented to Manners' use of his vehicle had he known about it. When reviewing a sufficiency of the evidence claim, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, there was "sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa.Super. 2001) (quoting ***Commonwealth v. Hennigan***, 753 A.2d 245, 253 (Pa.Super. 2000)). In applying this standard, "we may not weigh the evidence and substitute our judgment for [that of] the fact-finder." ***Id.***

The trial court addressed Manners' sufficiency claim in its opinion and properly concluded that the evidence was sufficient to support Manners' conviction for unauthorized use of automobiles. In particular, in light of the testimony of the vehicle's owner and surrounding circumstances, the trial

court found the evidence sufficient to prove that Manners did not reasonably believe the owner would have consented to Manners' operation of the vehicle had the owner known about it. We agree with and adopt the trial court's reasoning. *See* 1925(a) Op. at 3-5.

Next, Manners argues that the trial court's decision to increase Manners' prison sentence from 3 days to 14 days before he could become work-release eligible was vindictive and that the trial court relied on impermissible factors in imposing the sentence.[4] We review a trial court's sentencing determination for an abuse of discretion. *Allen*, 24 A.3d at 1064. We will not find an abuse of discretion "unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will" or demonstrates "such lack of support . . . as to be clearly erroneous." *Id.* (quoting *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007)).

The trial court thoroughly addressed Manners' discretionary aspects of sentencing claims in its opinion. We agree with and adopt the reasoning of

---

[4] Manners' claims challenge the discretionary aspects of sentencing. We will review these claims because Manners: (1) filed a timely notice of appeal; (2) raised the sentencing claims in his post-sentence motions; (3) included a Pennsylvania Rule of Appellate Procedure 2119(f) statement in his brief; and (4) raised a substantial question that his sentence is inappropriate under the Sentencing Code. *See Commonwealth v. Batts*, 125 A.3d 33, 43 (Pa.Super. 2015), *app. granted in part*, 135 A.3d 176 (Pa. 2016); *see also Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa.Super. 2011) (recognizing that appellant's claim that sentence is excessive because trial court relied on impermissible factors raises substantial question).

the trial court, which properly concluded that it did not rely on impermissible factors or otherwise abuse its discretion in imposing sentence. **See** 1925(a) Op. at 8-16.

Finally, Manners argues that the trial court's restitution order is illegal because the record does not support the restitution granted either to Goeser or to Blue Cross Blue Shield. A claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. **Commonwealth v. Redman**, 864 A.2d 566, 569 (Pa.Super. 2004). "[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." **Commonwealth v. Hughes**, 986 A.2d 159, 160 (Pa.Super. 2009).

After our review of this issue, we conclude that the restitution order is supported by the record for the reasons stated in the trial court's opinion. We agree with and adopt the trial court's reasoning. **See** 1925(a) Op. at 16-20.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2016

- 6 -

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs. : CRIMINAL ACTION -- LAW

JOSHUA MANNERS : NO. 4304-14

Nicholas J. Casenta, Jr., Chief Deputy District Attorney for the Commonwealth
Jason R. Antoine, Esquire. Attorney for the Defendant

## OPINION PURSUANT TO Pa.R.C.P. 1925

Defendant, Joshua Manners, has appealed from the judgment of sentence entered against him on September 2, 2015 and from the court's Order dated November 2, 2015, denying his Post-Sentence Motion to Modify Sentence. This Opinion is filed pursuant to Pa.R.C.P. 1925(a).

Following a two-day bench trial, defendant was found guilty on April 15, 2015 of one (1) count of Driving Under the Influence of Alcohol -- General Impairment (75 Pa.C.S.A. §3802(a)(1) (hereinafter "DUI") and one (1) count of Unauthorized Use of Automobiles (18 Pa.C.S.A. §3928). The trial judge also found him guilty of the summary offenses of Driving on Roadways Laned for Traffic -- Driving within Single Lane (75 Pa.C.S.A §3309(1)), Following too Closely (75 Pa.C.S.A §3310(a)), Driving on Divided Highways (75 Pa.C.S.A. §3311(a)), Driving Vehicle at Safe Speed (75 Pa.C.S.A. §3361), and Careless Driving (75 Pa.C.S.A. §3714(a)). He was sentenced on August 25, 2015 to a term of 1-6 months imprisonment followed by two (2) years of probation. He was made eligible for work release after serving 14 days.

Defendant filed a Post-Sentence Motion to Modify Sentence on September 3, 2015 and a hearing on the Motion was held on October 5, 2015. The Motion was denied on November 2,

- 1 -

2015 Defendant filed his appeal on November 25, 2015. On November 30, 2015, defendant was ordered to file a Concise Statement of Matters Complained of on Appeal. After receiving an extension of time within which to file his Concise Statement, defendant filed same on February 1, 2015. In his Concise Statement, he alleges the following:

1. Was the evidence sufficient to convict the Defendant of the crime of Unauthorized Use of a Motor Vehicle 18 Pa.C.S. §3928 when the Commonwealth did not prove beyond a reasonable doubt that the Defendant did not reasonably believe that the owner of the vehicle would have consented to the operation of the vehicle had he known of it pursuant to §3928(b)?

2. When defense counsel made application for appeal bail at sentencing was it vindictive or unsupported by permissible reasons on the record when the trial court increased the amount of jail time Defendant would have to serve from three days to (14) fourteen days to become work release eligible?

3. Did the trial court rely on impermissible factors in sentencing the Defendant which resulted in a harsh and excessive sentence?

4. Was the evidence sufficient to convict the Defendant of the crime of Driving Under the Influence of Alcohol or a Controlled Substance - General Impairment 75 Pa.C.S. §3802(a) as to the element of "incapable of safe driving?

5. Whether the trial court's restitution order was illegal in that it:

   a. Did not take into account the amount of restitution that the Defendant could afford to pay;

   b. Was speculative and unsupported by the record as to the $4300 ordered to Dr. Goesner at the time of sentencing;

   c. Violated the Defendant's due process rights as to the $5000 to Blue Cross/Blue Shield, and the $4,300 to be paid to Dr. Goeser.

See Defendant's Concise Statement of Matters Complained of on Appeal. The court will address each of these issues, starting with defendant's challenges to the sufficiency of the evidence.

- 2 -

1. The Commonwealth produced sufficient evidence to convict the Defendant of the crime of Unauthorized Use of a Motor Vehicle

Defendant claims that the evidence introduced at trial was insufficient to sustain a conviction for Unauthorized Use of a Motor Vehicle because the Commonwealth did not prove beyond a reasonable doubt that the defendant did not reasonably believe that Dr. Goeser would have consented to the operation of the vehicle had he known about it.

> In evaluating the sufficiency of the evidence, the test is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part, or none of the evidence.

Commonwealth v. Hoskins, 403 A.2d 521, 522-23 (Pa. 1979)(Citations omitted). See also, Commonwealth v. Brown, 711 A.2d 444 (Pa. 1998); Commonwealth v. Chambers, 599 A.2d 630 (Pa. 1992).

18 Pa.C.S.A. §3928 provides:

### § 3928. Unauthorized use of automobiles and other vehicles

(a) Offense defined.--A person is guilty of a misdemeanor of the second degree if he operates the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner.

(b) Defense.--It is a defense to prosecution under this section that the actor reasonably believed that the owner would have consented to the operation had he known of it.

18 Pa.C.S.A. §3928. Thus, pursuant to the statute, the Commonwealth must establish beyond a reasonable doubt that: (1) the defendant operated the automobile belonging to Dr. Goeser, and

- 3 -

(2) the defendant's operation of the automobile was without Dr. Goeser's consent. See 18 Pa.C.S. §3928. Pa. Standard Jury Instruction 15.3928(B)(Crim) states:

> 15.3928B (Crim)    UNAUTHORIZED USE OF AUTOMOBILES AND OTHER VEHICLES—DEFENSE
>
> Evidence has been presented in this case that the defendant believed that the owner would have consented to the operation of the vehicle if [he] [she] had known about it. The effect of this evidence is to provide the defendant with a defense to the crime of unauthorized use of [an automobile] [a vehicle] provided that the defendant's belief was reasonable. Therefore, you should find the defendant not guilty unless you find beyond a reasonable doubt that the defendant did not believe that the owner would have consented to the operation of the vehicle if [he] [she] had known about it, or that such a belief was unreasonable in the circumstances.

Pa. Standard Jury Instruction 15.3928(B)(Crim).

Based on the record, it is clear that the Commonwealth presented ample testimony and evidence from which the fact finder could find that every element of the crime of Unauthorized Use of a Motor Vehicle was established beyond a reasonable doubt. Defendant admits he was driving Dr. Goeser's vehicle the night in question, satisfying the first element of the offense. With regard to the second element, Dr. Goeser testified that defendant did not have permission to drive his car that night. N.T. 4/14/15, p. 118.

Defendant tried to claim that he reasonably believed Dr. Goeser would have let him drive the vehicle. He based this opinion on the fact that, when defendant and Dr. Goeser were in college eight (8) years prior, Dr. Goeser let defendant use his car on at least two (2) occasions to make quick trips to the store. On the night in question, however, Dr. Goeser testified that the plan was for Dr. Goeser to pick defendant and his date up from the hotel, drive to their friend's wedding, leave the car there, take a taxi cab home, and then pick up his car the next morning. N.T. 4/14/15, p. 110. They made these plans because all parties were planning on drinking that night. This evidence is supported by defendant's own testimony, in which he

-4-

stated that he obtained business cards for two (2) taxi cab companies from the hotel before they went to the wedding. N.T. 4/15/15, p. 21. The trial judge as fact-finder found Dr. Goeser's testimony credible and determined that the defendant's account was not credible. This conclusion is supported by the record. Thus, based on the record, it is clear that the Commonwealth presented ample testimony and evidence from which the fact-finder could find that every element of the crime of Unauthorized Use of a Motor Vehicle was established beyond a reasonable doubt. Accordingly, the court finds that the evidence introduced at trial was sufficient as a matter of law to support the guilty verdict for this crime and therefore, the defendant is not entitled to relief on this basis.

4. The evidence was sufficient to convict the Defendant of the crime of Driving Under the Influence of Alcohol or a Controlled Substance – General Impairment 75 Pa.C.S. §3802(a) as to the element of "incapable of safe driving"

Defendant was convicted of DUI under 75 Pa.C.S.A. §3802(a)(1), which provides:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. §3802(a)(1). Defendant argues that there was insufficient evidence to support a finding that he was "incapable of safe driving." Based upon the testimony presented at trial, the court disagrees.

At trial, witness Edna Velez testified that while she was driving, the defendant's car was suddenly directly behind her. N.T. 4/14/15, p. 33. She was travelling approximately 55 miles per hour and the defendant's vehicle was travelling faster than that. N.T. 4/14/15, p. 27, 32. The defendant then hit his brakes, causing his car to swerve, cross into the median, hit the embankment and flip over a couple times, landing on its side. N.T. 4/14/15, p. 27

- 5 -

Witness Susan Cornett also testified at trial. She stated that she saw defendant's vehicle come down the hill, hit the embankment and shoot up in the air like a whale. It went straight up, then came down on its side and started to roll. N.T. 4/14/15, p. 36. It then hit Mrs. Cornett's car. Her car started spinning until it hit the guardrail. N.T. 4/14/15, p. 36-37.

Trooper Daniel Wetzel of the Pennsylvania State Police Department also testified at the trial. He stated that he was only about two miles away from the accident scene when he heard about it on the police radio. He was at the scene in about 60 seconds. N.T. 4/14/15, p. 52. When he got there, he saw an SUV lying on its side and a smaller sedan up against the guardrail. N.T. 4/14/15, p. 52. The defendant was already out of his vehicle and was sitting on the guardrail. Trooper Wetzel asked defendant if anyone else was in the vehicle and he replied that he didn't know. Several police personnel then spent at least 20 minutes searching the area to see if they could locate anyone else. N.T. 4/14/15, p. 54-55.

While Trooper Wetzel was speaking to the defendant, he could smell alcohol on his breath. When he was asked whether he had anything to drink that night, the defendant at first denied that he had been drinking. Trooper Wetzel then told him that he could smell the odor of alcohol and the defendant stated that he had a beer or two earlier that evening. N.T. 4/14/15, p. 56.

Trooper Wetzel asked defendant who the vehicle he was driving belonged to. At first, defendant claimed it was a rental. N.T. 4/14/15, p. 67-68. After he was informed that the vehicle was not registered to a rental company, he stated that he borrowed it from a friend. N.T. 4/14/15, p. 68.

Trooper Wetzel asked the defendant to walk over to his patrol vehicle. During the walk, defendant's gait was very unsteady and he stumbled multiple times. N.T. 4/14/15, p. 56.

-6-

His speech was slurred and he was stammering. N.T. 4/14/15. p. 57. He did not have any obvious injuries and he did not want any medical treatment. N.T. 4/14/15. p. 57. Trooper Wetzel asked him to perform field sobriety tests and the defendant refused. He just kept saying that he wanted to speak to his father. N.T. 4/14/15. p. 59. It was clear to Trooper Wetzel that defendant was intoxicated so he placed him under arrest for DUI. N.T. 4/14/15. p. 60.

The defendant was transported to Jennersville Hospital for a blood test. Trooper Wetzel read him his O'Connell warnings, but defendant refused the blood test, again saying he wanted to speak to his father. N.T. 4/14/15. p. 64. He was then taken back to the barracks, where he was eventually picked up by Dr. Goeser and his mother.

Trooper Wetzel testified at the trial that "there's no doubt in my mind he was under the influence of alcohol and was incapable of safe driving that night." N.T. 4/14/15. p. 71. He bases his opinion on his training, experience, his interaction with the defendant that night, his speech, his walking and his basic motor skills. Id.

Further, Dr. Goeser testified that the defendant had approximately seven drinks that night and that he fell down once or twice while dancing. N.T. 4/14/15. p. 114, 115-16. He thought defendant was intoxicated that night. N.T. 4/14/15. p. 117.

Trooper Emily Dressler of the Pennsylvania State Police Department also testified at the trial of this matter. She stated that she was travelling southbound on Route 1 when she saw a vehicle on its side and on fire. Defendant was still in the driver's seat of the vehicle when she approached. He then climbed out of the vehicle on his own. N.T. 4/15/15. p. 6. She walked him over to the guardrail. His gait was very unbalanced, he couldn't walk straight and he was off kilter. N.T. 4/15/15. p. 7. She asked him if he was okay and he replied that he was fine.

When talking to him, she noticed that his speech was incoherent. It was very badly slurred and she noticed an odor of alcoholic beverage. N.T. 4/15/15, p. 7.

Based on the foregoing, the court finds that the Commonwealth produced ample evidence to prove that defendant was intoxicated to the point that he was incapable of safe driving. This is supported by the fact that defendant appeared to driving too fast and had to slam on his brakes and swerve to avoid hitting another vehicle. This caused him to lose control of his vehicle, which then shot into the air. When it came back down, it started flipping over. It hit another car, causing it to spin until it slammed into the guardrail. He couldn't tell the troopers that arrived on the scene whether anyone else was in the car, causing them to waste more than 20 minutes searching the area. There was a strong odor of alcohol coming from the defendant, and his speech was slurred, stuttered and stammering. He also had a very unsteady gait. At first, he denied having anything to drink that night before admitting that he had, in fact, drank that night. He also tried to claim that the vehicle he was driving was a rental. He also refused to do field sobriety tests and refused to take a blood test. Taking all of this into account, it is clear that the Commonwealth proved beyond a reasonable doubt that the defendant was incapable of safe driving due to intoxication that night. Accordingly, defendant's claim must fail.

2. The trial judge properly made defendant eligible for work release after serving fourteen (14) days in prison

In this case, the Commonwealth was seeking a sentence of at least two (2) months in prison, which was in the aggravated range of the sentencing guidelines. The defendant, on the other hand, was requesting a sentence in the standard range of three (3) to six (6) days in prison followed by two (2) years' probation. Defendant, who is a teacher, was trying to minimize his time away from school. Cognizant of this fact, the Commonwealth tried to get the sentencing

- 8 -

hearing done in June so that his teaching schedule would not be impacted. Due to a request for continuance filed by the defendant, the hearing did not occur until August 25, 2015. The Commonwealth objected to the defendant's request for continuance because it was trying to work around defendant's teaching schedule so that defendant could serve his time before the school year began. The dispute between the parties as to when the sentencing hearing would occur got heated between the parties. The court had to intervene and specially listed the hearing for August 25, 2015. By that time, unbeknownst to the court, the school at which defendant taught already started for the school year.

Prior to the hearing, the Commonwealth filed a Memorandum in Aid of Sentencing, in which it requested a jail sentence of 2 – 6 months for the DUI and a consecutive 2 years' probation for the Unauthorized Use of a Motor Vehicle charge. The Commonwealth also stated that it did not oppose work release for the defendant. Even though the defendant did not know what his sentence would be, he was aware that the Commonwealth was requesting significant jail time.

In an attempt to minimize defendant's absence from school while taking into account the serious nature of the charges, the court sentenced him to one (1) to six (6) months incarceration, but he was made eligible for work release after three days. At the time the sentence was handed down, the court was under the impression that defendant was going to serve his time immediately so that he could get back to his students as soon as possible. It was not until the court announced the sentence that it learned for the first time that the defendant was not going to report to the prison immediately after the hearing. The following exchange occurred at the sentencing hearing:

THE COURT: I think this is an extremely serious case that calls for incarceration. I think there are aggravating factors. I think the fact that you left

- 9 -

this way, very drunk, people described that. I didn't find your trial testimony credible at all, frankly. And I thought it was a shame, because you are a teacher. But I think that part of the issue is that alcohol clouded your judgment.

You then endangered yourself and others by literally crossing over Route 1, going airborne, and nearly hitting the Cornetts and damaging your car and their car. And you used your friend's car to do it. All those things are atrocious conduct.

And they're not - - you didn't mean to do any of that, but you did mean to get behind the wheel of a car when you shouldn't have. And it's not even your own car. You took your friend's car. Which puts him in a situation if you had killed the Cornetts. He already feels bad enough about the situation, you used his car as a dangerous weapon because you felt like leaving a wedding. It was a selfish act.

\* \* \* \* \*

As far as the DUI sentence, my sentence will be one to six months, eligible for work release. So the work release is you have to do as least three days but, you know, you are going to have to work with your school. If they like you that much, maybe they can get you in. But it's too serious a case to just give you the flat sentence. With a consecutive two years probation on the unauthorized use of a motor vehicle. All the conditions of that charge to be consecutive.

My intent, sir, is, and I told you this at the time of the sentencing, that you start your sentence today. I will give you credit for time you have been here since 9:30 this morning, or maybe 10:00 this morning in the courtroom. You came a little late. 10:00 this morning. Your attorney now has a chance to look into getting work release as soon as he can. But you will have to do three days in before you are eligible for work release.

DEFENSE COUNSEL: Your Honor, this is not the sentence we were anticipating. At this point I ask for bail.

THE COURT: I said it every step of the way. I said that he would be going to jail every step of the way. The point about this case was I specifically stated that - - to be prepared to go to jail this day. Now, what you are saying is you want bail - -

DEFENSE COUNSEL: We'd ask for appeal bail - - to be continued on appeal bail to give him that chance because it's a first offense.

\* \* \* \* \*

THE COURT: Okay. Well, on that - - part of my whole reason I set up the work release portion was simply because I thought you were going in. The Commonwealth asked for two months. I specifically said - - what I'm

- 10 -

going to do is, and this isn't a punishment, I'll do the bail. But he's eligible for work release after 14 days. Because then you can - - whenever you do go to jail, you will have to do 14 days in there. Because the reason I made it eligible after three days was because, frankly, I was trying to get you back to school as soon as possible. But if you're going to be serving the sentence later - - this case was a very serious case.

Now, I do find you pose a danger to the community in this particular case. Again, I think you got undercharged in this case. I rarely say that. You could have been charged with all sorts of things, reckless endangering three different people, including yourself. Not including yourself.

So the sentence is work release is eligible after 14 days. Bail will be set.

N.T. 8/25/15, pp. 19-22.

Defendant thereafter filed a Post-Sentence Motion to Modify Sentence. During the hearing on his post-sentence motion, the court learned for the first time that he never informed his employer of the charges of which he was convicted and never talked to them about work release. Instead, he asked the court to sentence him to house arrest instead of a prison sentence. He did this because, regardless of whether he is granted work release after 3 days or after 14 days, his employment will be terminated. The court denied defendant's request and again explained why defendant received the sentence he received. The following exchange occurred:

MR. ANTOINE: Well, what we're looking to do is you sentenced him to a term of work release. We're looking to substitute the work release for house arrest. He's a teacher. All we're saying, essentially, is the work release is a prison sentence. No elementary school is going to cooperate with the prison. As soon as they send that letter, he's going to be terminated.

THE COURT: Did he tell his employer he has a DUI?

MR. ANTOINE: No.

THE COURT: I find that disturbing, frankly.

MR. ANTOINE: He talked to the Union and the Union has said - - and I don't think he as (sic) any legal obligation to tell him.

THE COURT: No, it's an ethical one, but go ahead.

- 11 -

MR. ANTOINE: And the Union says that, you know, we're fighting the unauthorized use charge on appeal, and if we're successful on that, he's just facing a first offense DUI, and he can still keep his job. I know there is an aggravating set of factors, but this is his first offense DUI and that is how it will appear on his record, and he can continue to teach. Work release will not be feasible for him because he has to modify lesson plans, printouts. It's not a formal job. There's an after school thing he has to do. Work release is a prison sentence. We're asking to substitute that with some kind of house arrest. I agree there has to be punishment here, but the main argument was this is a one time screw up in his life. I ask you to take that into consideration. And, so, I guess my point is that at the end of this, he can still keep his job because it's a first offense, and I don't think it's the least restrictive means, you know, to give him his prison sentence. If he goes to prison for one month, or for any length of time, he's going to lose his job, you know. So I ask that you do something where he can do it on weekends. And on house arrest he can, you know, wear long pants and keep his career he works so hard for.

The other thing I want to bring up, and this is my final point, is that sentence was increased. The original sentence on the record was three days followed by work release.

THE COURT: I will address that, why I did that.

MR. ANTOINE: And then we asked for appeal bail and the sentence went up a week to 14 days, if my memory serves me correctly.

THE COURT: The reason I did that, Mr. Antoine and Mr. Prisco sent e-mails back and forth. It got to the point, it got very bitter about scheduling this case. Mr. Antoine had a non jury trial. I had to get in the middle of this, to schedule this. I scheduled it specifically out of my schedule, popped it in, because my impression was that you were going to plea, go into jail, and immediately start teaching your September term. So the only reason I considered the three days of work release, which I have never done on a one month sentence, because I thought you were going to start school the following Monday. That's why. So that was the only reason I put it in there. It was not a punishment for appeal. It was literally, I said: Oh, you're going to start school Monday. What I have done in every other work release, because it's the last quarter of your sentence, you do work release. I don't do it after three days, but I did it because it was the week you are starting school Monday. I will put you in for the weekend and get you out for school. That's the only reason I did that.

MR. ANTOINE: And, well, the work release is essentially the jail sentence.

THE COURT: But that's the part I felt compelled to explain. When you heard that, and Mr. Manners did not know this was going on, we got you in, I thought we were coordinating things so you can go in when I was sentencing you, get the days out, get you on the work release. I thought you had talked to the school, set it up, and that you would go in, do your time, then work release with school. That's not what's going to happen. That's the only reason it went from 3 to 14, because I never give a three-day work release sentence. That's silly. But that's the reason I did that particular part of your sentence.

N.T. 10/5/15, pp. 2-6. The court further stated,

My point, on this point, is the sentence is an appropriate sentence. I want to clear up for you, I was not saying jump from 3 days to 14 days for any other reason. I was trying to do it for convenience for you, because I thought you were going into jail, come out, and Monday start teaching. That's why I did the three-day work release. I thought I was trying to do you a favor.

N.T. 10/5/15, pp. 10-11.

It is clear that the court did not change the defendant's sentence for any vindictive or other impermissible reason. As stated above, the change in the sentence had nothing to do with the fact that he intended to file an appeal. The court was trying to give defendant a break in order to minimize the amount of time he would be away from his students. In fact, if the court knew he was not going to report to prison immediately, defendant would have been sentenced to 21 days before being made eligible for work release, as is this court's usual practice. (The court customarily makes a defendant eligible for work release for the last quarter of his or her sentence. See N.T. 10/5/15, pp. 5, 9-10). Since the court did not change its sentence due to any impermissible reason, defendant's claim should fail.

    3. The trial court did not rely on impermissible factors in sentencing the Defendant

Defendant claims that the court relied on impermissible factors in sentencing him which resulted in a harsh and excessive sentence. He bases this opinion on the fact that the court made the following comments during the post-sentence hearing:

- 13 -

Well, literally bad timing for you. The whole time I'm dealing with this case, I just dealt with one which two people were killed. I was literally thinking that could have been you. You went airborne, went in, crashed their car. I thought in this case, they under-charged the case. You could have been convicted by aggravated assault by vehicle or reckless endangerment. This is the most extreme case of a DUI . . . . You are lucky to be standing here and the Cornetts are lucky they are not dead.

* * * * *

Here's where I'm at. I want to hear from Mr. Manners. To me, the one month was light. He stole a car, went airborne. He almost hit the first car. He hit two people in a car there. The one month is light. That is light. They asked for two months. I gave one month. I thought he would take it and run with in. On these facts, it's a bad case for DUI. When you take a steady progression of seeing people who walk out of this courtroom, who lose their loved ones - - what I saw at this trial, frankly, I just had a student here from my college, a student watch this sentencing before he left. The students were here during your trial. They wrote papers about how incredible your testimony was and how they were embarrassed how you were a school teacher testifying so poorly. The whole trial left me a sour taste in my mouth with you. . . . The one month is a light sentence. I easily could have given you three months.

N.T. 10/5/15, pp. 6-8. The court did not rely on improper information when determining what defendant's sentence should be. The court only made those statements to reinforce the fact that the defendant was very lucky in this case, the results of his decision to drive while intoxicated could have been a lot worse, and this was a very serious case. Further, the court is hopeful that the defendant will learn from this incident and will never decide to get behind the wheel of an automobile after drinking again. The court was trying to show the defendant that his choices impact other people and have an effect on them as well. At no time, however, did the court rely on impermissible factors when determining defendant's sentence.

42 Pa.C.S.A. §9721 sets forth the types of sentences that can be imposed by a court in this Commonwealth. It also indicates the factors that should be taken into account when determining the appropriate punishment. The statute states in relevant part:

(a) General rule.--In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and may impose them consecutively or concurrently

- 14 -

(1) An order of probation.

(2) A determination of guilt without further penalty.

(3) Partial confinement.

(4) Total confinement.

(5) A fine.

(6) County intermediate punishment.

(7) State intermediate punishment.

\* \* \* \* \*

(b)     General standards. – In selecting from the alternatives set forth in subsection (a) the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42 Pa.C.S.A. §9721. It should be noted that in this Commonwealth:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion. However, the sentencing court must state its reasons for the sentence on the record, which in turn aids in determining "whether the sentence imposed was based upon accurate, sufficient and proper information. . ." When imposing sentence, a court is required to consider "the particular circumstances of the offense and the character of the defendant." In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation. "It must be demonstrated that the court considered the statutory factors enunciated for determination of sentencing alternatives, and the sentencing guidelines." Additionally, the court must impose a sentence which is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, and the rehabilitative needs of the defendant." Where the

- 15 -

sentencing judge had the benefit of a pre-sentence report, however, it will be presumed that he "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."

Com. v. Dotter, 589 A.2d 726, 730 (Pa. Super. 1991) (citations omitted). See also, Com. v. Andrews, 720 A.2d 764 (Pa. Super. 1998) and Com. v. Lawson, 650 A.2d 876 (Pa. Super. 1994).

In the instant case, the defendant was correctly sentenced in accordance with 42 Pa.C.S.A. §9721 and existing case law. The court took into account all relevant factors, including all the information provided in the presentence report, and considered the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant and determined that defendant should have been sentenced to 1-6 months' incarceration. The court stressed numerous times that this was a very serious case beyond a normal DUI, defendant could have been charged with Recklessly Endangering Another Person, there were many aggravating factors present, and he could have easily been sentenced to three (3) months in jail. See N.T. 8/25/15, pp. 4, 8, 9, 12, 19, 20, 24, 25; N.T. 10/5/15, pp. 6, 7, 8, 9, 10. Further, during both the sentencing hearing and the post-sentence motion hearing, the sentencing judge fully explained his reasons in open court for sentencing defendant to 1 to 6 months. Accordingly, the court finds that defendant's sentence is proper and he is not entitled to relief on this basis.

5. The trial court's restitution order was proper

Defendant was ordered to pay restitution of $300.42 to Mr. and Mrs. Cornett for their out-of-pocket expenses, $9,620.76 to State Farm Insurance Company for the money they paid to the Cornetts for the damage to their car, $5,000 to Blue Cross/Blue Shield for medical expenses paid on Mrs. Cornett's behalf, and $4,300 to Dr. Goeser for the damage to his vehicle.

- 16 -

Defendant claims that the court's restitution order was illegal. Specifically, he claims that the court (1) did not take into account the amount of restitution that the defendant could afford to pay; (2) was speculative and unsupported by the record as to the $4300 ordered to Dr. Goesner at the time of sentencing; and (3) violated the defendant's due process rights as to the $5000 to Blue Cross/Blue Shield, and the $4,300 to be paid to Dr. Goeser.

18 Pa.C.S.A. §1106 governs restitution for injuries to people or property. It provides in relevant part:

(a) General rule.--Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

(b) Condition of probation or parole.--Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.

(c) Mandatory restitution.--

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) The victim.

- 17 -

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

(iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

(iv) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

(3) The court may, at any time or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, alter or amend any order of restitution made pursuant to paragraph (2), provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

(4) (i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

(ii) Where the district attorney has solicited information from the victims as provided in subparagraph (i) and has received no response, the district attorney shall, based on other available information, make a recommendation to the court for restitution.

(iii) The district attorney may, as appropriate, recommend to the court that the restitution order be altered or amended as provided in paragraph (3).

18 Pa. S.C.A. § 1106. The statute, as well as existing case law, makes it clear that the sentencing court must order restitution to the full extent of the victim's loss, regardless of the defendant's ability to pay. 18 Pa. S.C.A. § 1106; Commonwealth v. Rush, 909 A.2d 805 (Pa. Super. 2006); Commonwealth v. Colon, 708 A.2d 1279 (Pa. Super. 1998). The defendant's ability to pay need only be considered upon default. Id. Accordingly, the court did not err when it did not consider the defendant's ability to pay when determining the amount of restitution.

Further:

It is the Commonwealth's burden of proving its entitlement to restitution. Commonwealth v. Boone, 862 A.2d 639, 643 (Pa. Super. 2004) (stating that the amount of restitution must be supported by the record). When fashioning an order of restitution, the lower court must ensure that the record contains the factual basis for the appropriate amount of restitution. Commonwealth v. Pleger, 934 A.2d 715, 720 (Pa. Super. 2007). The dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution. Id. The amount of the restitution award may not be excessive or speculative. Commonwealth v. Rush, 909 A.2d 805, 810 (Pa. Super. 2006), reargument denied. It is well-settled that "[a]lthough it is mandatory under section 1106(c) to award full restitution, it is still necessary that the amount of the 'full restitution' be determined under the adversarial system with considerations of due process." Commonwealth v. Ortiz, 854 A.2d 1280, 1282 (Pa. Super. 2004).

Commonwealth v. Atanasio, 997 A.2d 1181, 1183 (Pa. Super. 2010). In the instant case, the Commonwealth submitted documents from Mr. and Mrs. Cornett documenting their out-of-pocket expenses. It also submitted documents showing payments made by State Farm on their behalf. In addition, Dr. Goeser indicated that his vehicle sustained damages in the amount of $4,300. Thus, the amount of restitution ordered by the sentencing judge was properly based on information received from the parties during the hearing.

Even though Dr. Goeser did not provide any documentation for his losses, the court found him credible. In an abundance of caution, however, the court ordered the Commonwealth to provide documentation of this amount to the defendant within 30 days of the date of the hearing. It was not error for the court to set the amount of restitution on the credible evidence presented to it at the hearing.

In addition, Mrs. Cornett testified that she sustained a whiplash injury and an injury to her right arm as a result of the accident. N.T. 4/14/15, p. 40. She received medical treatment for her injuries until the end of December 2015. N.T. 4/14/15, p. 41. She still has less strength in her right arm than she did prior to the accident. Id. Even though she was treating with a chiropractor before the accident, she testified that the treatment she received after the accident until the end of December 2015 was attributable to injuries she sustained during the accident. The court found her testimony credible and awarded restitution accordingly.

Defendant's right to due process was satisfied at the sentencing hearing. All restitution the defendant was ordered to pay was based on information received during the hearing, was supported by the record, and was not speculative or excessive. The court finds, therefore, that its restitution order was proper. Defendant, therefore, is not entitled to relief on this basis.

Based on the foregoing, the court finds that each of defendant's alleged assignments of error are without merit.

BY THE COURT:

*Patrick Carmody*

PATRICK CARMODY

4/29/16
DATE

Certified From The Record This _29_ Day of _April_ 20_16_ -20 _____ Deputy Clerk of Common Pleas Court